**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



ELEAZAR HERRERA-DAVILA, AKA
Eleazar Herera-Davila, AKA Eleasar
Herrera, AKA Eleasar Davila Herrera,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

Respondent.

No.    15-73547

Agency No. A200-963-713

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 9, 2018
San Francisco, California

Before:  THOMAS, Chief Judge, FERNANDEZ, Circuit Judge, and EZRA,[**]
District Judge.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

Eleazar Herrera-Davila, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal of an Immigration Judge's decision determining he was ineligible for asylum and withholding of removal due to a prior conviction for a particularly serious crime, and denying Herrera-Davila's Convention Against Torture ("CAT") claim because he failed to show that it was more likely than not that he would be tortured on his return to Mexico. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition. Because the parties are familiar with the history of the case, we need not recount it here.

I

The BIA did not abuse its discretion in determining that Herrera-Davila's prior conviction constituted a "particularly serious crime." The Attorney General may "designate offenses as particularly serious crimes through case-by-case adjudication." *Adendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015). In the case-by-case analysis, the agency examines "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and . . . whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982). The BIA did not abuse its discretion in applying the

*Frentescu* factors to Herrera-Davila's prior conviction for felony drug possession. In determining that Herrera-Davila's prior conviction qualified as a "particularly serious crime," the BIA conducted an individualized analysis and considered the nature and the circumstances of the conviction, the length of the sentence imposed, Herrera-Davila's level of involvement, and the risks and dangers of drugs.

Herrera-Davila argues the agency must first analyze the elements of the offense to determine whether it qualifies as a particularly serious offense pursuant to *Matter of N-A-M*, 24 I & N Dec. 336 (BIA 2007), and Nev. Rev. Stat. § 456.336 categorically cannot qualify because it is a mere possession offense. However, the question under *N-A-M* is whether the offense "potentially" qualifies as a "particularly serious crime." 24 I&N Dec. At 337. Section 456.336 carries penalties commensurate with a traditional drug trafficking offense, depending on the quantity of drugs involved. Therefore, it "potentially" qualifies, and we move to the second stage of the analysis to conduct an individualized assessment. Here, given the large quantity of marijuana–150 pounds–and the presence of firearms, the BIA was well within its discretion, on an individualized determination, to categorize this conviction as "particularly serious."

## II

Substantial evidence supports the BIA's determination that Herrera-Davila is ineligible for deferral of removal under the CAT because he failed to prove a likelihood of future torture. To be eligible for deferral of removal under the CAT, the applicant must establish that if removed to the proposed country of removal, he "is more likely than not to be tortured." 8 C.F.R. § 1208.17(a). Herrera-Davila's testimony as to his fear to return to Mexico did not establish it was more likely than not he would be tortured upon his return. Herrera-Davila did not provide any evidence that he was tortured in the past. Although Herrera-Davila testified he feared someone involved in the underlying drug possession would kill him if he returned to Mexico, he testified that he did not know if that person actually resided in Mexico, and if so, where he resided; and he did not provide sufficient detail as to how his return to Mexico would be discovered.

**PETITION DENIED.**